# THOMAS C. GREEN and PHILIP TRAMMELL, *vs.* MICHAEL TRIEBER.

A debtor in insolvent circumstances executed a conveyance, in which, after reciting his indebtedness to certain creditors, parties of the third part, named in the deed, and his desire to pay the debt of one of them, and such of the others named as should sign the deed, he conveyed all his property to trustees in trust:—1st, to permit the grantor to possess and enjoy all said property, paying no rent therefor, until a sale be made according to the deed, he giving bond, with security, to deliver the property on the day of sale, said bond to be held on the trusts declared in reference to the property. 2nd, if the grantor should not pay one of said creditors his debt in three semi-annual instalments, and the other parties signing the deed their debts in four such instalments, and all costs, &c., the trustees should sell the property, and, (if the proceeds proved sufficient,) pay two of said creditors, and such others named in the deed as should sign the same, and the balance, if any, to pay over to the grantor. 3rd, if the proceeds be insufficient for this purpose, then to pay a certain claim of one of said creditors, and distribute the residue ratably to another creditor, and to such of the others named in the deed as might sign the same. 4th, the deed to be void, if the grantor should pay all the debts mentioned in it, with costs, commissions, &c ; and 5th, the creditors named in and signing the deed, covenanted with the grantor to extend to him a credit of six, twelve, eighteen and twenty-four months on their claims, subject to the power to sell in case default be made in paying these instalments as they fell due. There was no provision stipulating for releases from the creditors who might sign, and no time limited within which they were to signify their assent to the deed by signing it. HELD, that this deed was fraudulent and void as against creditors.

If this deed be regarded as an assignment for the payment of his creditors on terms proposed by the grantor, it is void, because, instead of passing the property over to the trustees for the benefit of the creditors, it is retained by the debtor himself, for six and perhaps twenty-four months, and for so long a time as the trustees may deem proper, provided none of the assenting creditors require the sale to be made.

A debtor cannot rightfully put his property beyond the reach of his creditors, and turn them over for their debts to the rents and profits uncertain in quantity and fluctuating in value, nor has he a right to transfer his property and substitute his own bond in its place.

The law makes a debtor's property liable for his debts, and if the bond be as good as the property, it does not affect the question, because the effect of the arrangement is to change the property and frustrate the recovery of just demands by pursuing it.

If this deed be regarded as a security in the nature of a mortgage, it is equally void, because the clause containing the equity of redemption, secures to the

debtor no right he would not otherwise possess, and cannot give effect to an instrument that would be void but for its insertion.

But the right to redeem in this case is not to be exercised as to all the debts named in the deed, but only as to such of the creditors as may assent to its provisions, the effect of which is to gain time by coercing the creditors who may come in, and to hinder and delay those who may refuse the terms of the deed as well as those not provided for.

The law does not tolerate any hindrance in assignments for the benefit of creditors, beyond what may be reasonable and necessary to the purposes of the trust; if no time be named within which the assent must be given, or if the time be unreasonable, the deed is void.

Reservations for the support of the insolvent debtor and his family, must be treated like any other reservation of his property for his own use, and all such are void as against creditors.

These assignments must be made in good faith, for the purpose of paying debts, and without any intent to lock up the property from other creditors for the use of the debtor: a conveyance by the owner to another in trust for himself, is in effect a conveyance to himself, and the grantor in such a deed can have but one motive, and that must be to defeat or hinder the claims of others.

This court will hereafter follow the decisions in the cases of *McCall vs. Hinkley*, 4 *Gill*, 128, and *Kettlewell vs. Stewart*, 8 *Gill*, 472, sustaining the validity of assignments, exacting releases from creditors who may assent to the deed, and embracing all the grantor's property, without reservations to himself.

If the assignment contain but a part of the property of the debtor, or if before the full payment of the entire claims of creditors, any part of the property assigned be reserved to the debtor, such an assignment is fraudulent and void.

An assignment for the benefit of creditors, exacting releases as the condition on which they may participate in the fund, must transfer all the debtor's estate.

The principle on which such assignments are sustained, is, that the statute of *Elizabeth* does not operate on one's time and future labor, but only devotes his property to the payment of his debts, and prevents that only from being placed beyond the reach of his creditors by fraudulent conveyances.

The case of *Estwick vs. Caillaud*, 5 *Term Rep.*, 420, was the case of a debtor securing a portion of his creditors the full payment of their claims ultimately, and leaving other property to pay other debts, and is manifestly distinguishable from the deed in this case, and is not applicable to it.

The case of *Kevan vs. Branch*, 1 *Grattan*, 274, sustaining a deed containing reservations to the grantor, similar to those of the deed in this case, is opposed to nearly all the cases in which the subject has been discussed, and this court cannot acknowledge its authority.

Green and Trammell, *vs.* Trieber.

The case of *Wilkes vs. Ferris*, 5 *Johns. Rep.*, 335, was decided on the authority of *Estwick vs. Caillaud*, 5 *Term Rep.*, 420, and has been followed by scarcely any subsequent case in New York, while most of them have adopted the opposite doctrine.

Later decisions in New York have gone so far in vacating deeds containing such reservations, that the decision of the Court of Errors, in the case of *Murray vs. Riggs*, 15 *Johns.*, 571, may be considered as justly exploded.

A debtor cannot make a reservation, at the expense of his creditors, of any part of his income or property for his own benefit, nor can he stipulate for any advantage to himself or family.

Where a deed reserves to the grantor the power of making leases, or of revoking or altering the trusts, or of charging the estate, or gives the trustee power to change the order of preferences, it is void.

There is a distinction between conveyances of the whole or a part of the debtor's property, as a security for particular debts, on an agreement with the creditors for further time, and voluntary conveyances by debtors for the payment of their debts. The character and design of the instruments are not the same; in the former, the object is to gain time by agreement with the creditor, in which it is consistent with the nature of the transaction that the debtor shall keep possession, in the latter, satisfaction to the extent of the whole property is proposed, and the law presumes them to be executed with reference to the benefit of the creditors.

The reservation to the grantor of the surplus that may remain after paying the assenting creditors, will avoid the assignment.

When the court can see that the deed is fraudulent on its face, there is nothing for the jury to pass upon; if the law imputes to the grantor a design in making the deed, no evidence of intention can change the presumption; if the law declares such deeds to be void, it is no matter how the question of fraud in fact may stand.

The written laws of a foreign State or country should be proved by the law itself as written, and the common customary or unwritten law by witnesses acquainted with the law.

APPEAL from Allegany county court.

On the 4th of January 1849, an *attachment* on warrant was issued out of Allegany county court, at the instance of Michael Trieber, the appellee, to affect the goods, chattels, lands, tenements and credits, of one John Gamber, a non resident debtor. This attachment was levied by the sheriff upon certain personal property, consisting of two wagons, twelve mules, and twelve sets of harness for the same, and upon the petition of the attaching creditor, under the act of 1839, ch. 39, Judge

Wiesel, one of the judges of said court, on the 15th of January 1849, passed an order for the sale of said property, which was accordingly sold by the sheriff, on the 23rd of the same month, for $823.38⅓, on a credit of ninety days, and the proceeds brought into court to await the event of the suit.

At April term 1849 of said county court, the appellants, Green and Trammell, upon motion, came in as claimants, and being allowed to appear, pleaded:—1st, that the goods and chattels attached, were not the property of said Gamber when the attachment was issued and levied, but were the property of said claimants, as trustees under a certain deed of trust executed to them by said Gamber, on the 1st of June 1848.  2nd, that the proceeds of sale ought not to be paid over to Trieber, by order of the court or otherwise, because the goods belonged to said claimants, as trustees as aforesaid, and not to said Gamber, when the attachment issued and the levy and sale were made.  3rd, *non assumpsit* for Gamber. The appellee traversed the first and second pleas, and issues were joined on them.

*1st Exception.* The plaintiff to support the issues on his part, offered the attachment papers, consisting of the account on which the attachment issued, showing that Gamber was indebted to him in the sum of $182.91, the usual affidavit, &c.  The claimants then offered in evidence the following deed of trust, executed to them by Gamber, on the 1st of June 1848:

"This indenture, made this 1st day of June, A. D., 1848, between John Gamber, of the county of Hampshire and State of Virginia, of the first part; Thomas C. Green and Philip Trammell, of the same county and State, of the second part, and Susan J. Gamber, J. C. Manning and S. S. Lee, merchants and partners, trading under the name and firm of Manning and Lee; Adolphus W. Peabody and Edward L. Fant, merchants and partners, trading under the name and firm of Peabody and Company; Foley and Woodsides, merchants and partners, trading under that name and firm; William Montgomery, J. R. Annan and Samuel D. Brady, of the third

part.   Whereas the said John Gamber is justly indebted to the said several parties of the third part in large sums of money, as well as can be ascertained at this time as follows: to Susan J. Gamber in the sum of $9053.27; to Manning and Lee in the sum of $8200; to Peabody and Company in two several sums, the one of $500 and the other of $1510; to Foley and Woodside in the sum of $153.19; to William Montgomery in the sum of $195; to J. R. Annan in the sum of $205; to Samuel D. Brady in the sum of $489.56, due by three bonds, payable by John Gamber to the said Brady, in which Susan J. Gamber is surety, falling due in six, twelve and eighteen months from their date.  And whereas the said John Gamber is desirous to secure the payment of the aforesaid several sums of money to the said Brady, and to such of the parties of the third part other than said Brady who shall sign this deed."

The deed then proceeds to convey certain real and leasehold property, situated in said county of Hampshire, which is particularly described by references to the several deeds by which the same was conveyed to the said Gamber; also various articles of personal property specifically enumerated, among which were six four-horse wagons, twenty-three mules and harness for the same, fifty-two tons of iron, &c., a stock of merchandise, an inventory of which was appended to the deed, "the same being all the personal property of John Gamber, in the county and State aforesaid," unto the "said Thomas C. Green and Philip Trammell, their heirs, executors, administrators and assigns, upon trust nevertheless for the following purposes and uses, and none other; that is to say, that the said trustees shall permit the said John Gamber to hold possession of all the said property, real, personal and mixed, to take the rents, issues and profits thereof, and to possess and enjoy the use and benefit thereof, and the said incorporeal hereditaments, paying no rent therefor until a sale shall have been effected under the provisions of this deed, the said John Gamber having first executed a bond, with approved security, to the said trustees, that he will deliver up to them

on the day of sale, or when thereunto required, for the pur-
pose of making a sale under this deed, all the property so left
in his possession, which bond the said trustees shall hold for
the benefit of Samuel D. Brady, and such other parties of the
third part, other than the said Brady, who shall sign this deed,
and in like manner as the other property hereby conveyed is
held.    And upon this further trust, that the said trustees shall,
as soon as they conveniently can, sell at private sale the afore-
said fifty-two tons of iron, or thereabouts, or so much thereof
as there may be, and apply the proceeds thereof as hereinafter
directed, as to the distribution of the proceeds arising from the
sale of the other property, real, personal and mixed, hereby
conveyed; and upon this further trust, that if the said John
Gamber, his executors, administrators and assigns, shall pay
to the said Samuel D. Brady his debt, in three equal semi-an-
nual instalments, and to such of the parties of the third part,
other than the said Samuel D. Brady, who shall sign this deed,
their debts, in four equal semi-annual instalments from the date
of this deed, and all the costs of executing this trust, including
a commission of two and-a-half per cent. on the amount of the
debt due to the said Samuel D. Brady, and of the debts due to
such of the parties of the third part, other than said Brady,
who shall sign this deed, to the said trustees: then the said
trustees, so soon after the default in the payment of any of
said instalments or of said costs, including said commission,
as they may think proper, or any of the parties of the third
part may require, shall and will sell on the premises, to the
highest bidder at public auction, for cash, the said estate, real,
personal and mixed, and all the rights and privileges, ease-
ments and incorporeal hereditaments, or such part thereof as
may be deemed necessary, after having fixed the time of sale
at their discretion, and given notice thereof and of the place
of sale for six weeks, in one newspaper published at Cumber-
land and another published at Baltimore city, in the State of
Maryland, and out of the moneys arising from such sale, as
well public as private, after satisfying the charges thereof and
all other expenses attending the premises, including a com-

mission of five per cent. on the amount of said sales to the said trustees, shall first pay to the said Peabody and Company the debt of $500, aforesaid, and then pay over to the said Samuel D. Brady, and to such of the parties of the third part, other than said Brady, who shall sign this deed, the amount of their respective debts aforesaid, including the other debt of $1510 to Peabody and Company, and the balance, if any, shall pay over to the said John Gamber, his executors, heirs and assigns; but if the proceeds of said sales be insufficient for the purpose above mentioned, then and in that case the said trustees, after having first satisfied the charges of said sale and all costs attending the premises, including said commission of five per cent. to the said trustees, shall pay first the debt of $500, with interest, to Peabody and Company, and then the residue shall distribute ratably to said Samuel D. Brady and to such parties of the third part, other than Samuel D. Brady, who shall sign this deed, in such manner that the said distributees shall receive the same per centum on their respective debts and interests, including any payments which may then have been made to them by said Gamber of the first part thereon, the said second debt of Peabody and Company of $1510, and interest thereon, being included in said pro rata distribution.   And in case the said John Gamber shall fully pay off and satisfy the debt and interest due to the said Samuel D. Brady, and the several debts and interest due to such parties of the third part, other than the said Brady, who shall sign this deed, and all costs and charges attending the premises, including a commission of two and-a-half per cent. on said debts and interest to said trustees, before a sale shall have taken place under the provisions of this deed, then this indenture to be void, else to remain in full force and virtue. And such parties of the third part, other than Samuel D. Brady, whose names are hereto subscribed, do hereby covenant and agree, to and with said John Gamber, to extend to him a credit of six, twelve, eighteen and twenty-four months on their several debts aforesaid, divided into four equal instalments, provided that a public sale shall not sooner take

3     v. 3

place under the provisions of this deed." This deed was signed by Gamber, the grantor, Green and Trammell, the trustees, Susan J. Gamber, and Fant, Annan, Montgomery, Peabody, Manning and Lee, of the third part.

The claimants further proved, that the property attached by the sheriff in this case was part of the property embraced in said deed of trust, and that said Gamber, at the time of the execution of the said deed, was a citizen and resident of Hampshire county, Virginia, and was such citizen when the attachment issued, and that said property, when seized under this attachment, had been sent over to Maryland by the said trustees for a temporary purpose.

The plaintiff then proved, that on the 1st of June 1848, when said deed was executed, the. said Gamber was wholly unable to pay his debts and was totally insolvent, that said deed conveyed all the property, of every description, which said Gamber owned and possessed, and prayed the court to instruct the jury, that if they believed the evidence so adduced, the said deed is fraudulent and void as against creditors; which instruction the court, (MARTIN, C. J., and MARSHALL, A. J.,) gave, upon the ground that the said deed is to be regarded as a deed of trust, and that it is void at common law and under the statute of 13th *Elizabeth*, *chap.* 5, on account of the reservations therein contained in favor of the grantor.    To this direction to the jury the claimants excepted.

*2nd Exception.* The plaintiff then proved, that Susan J. Gamber, mentioned in said deed as one of the parties of the third part, was the wife of the grantor, and then prayed the court to instruct the jury, that if they believe this evidence, then said deed is also fraudulent and void, because of the large sum of money thereby secured to the said Susan, no marriage articles or marriage settlement, or other evidence, being adduced to show that she could in law stand in the relation of creditor to her own husband, which direction the court gave and the claimants excepted.    This decision of the court below was made *pro forma*, by consent of parties, in

order that the opinion of the Court of Appeals might be expressed upon the question raised by this exception.

The verdict and judgment being in favor of the plaintiff, the claimants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Geo. A. Pearre* for the appellants, contended:

1st. The deed in this case is valid. It is simply a deed of mortgage, by way of trust to third parties, for the benefit of creditors. It contains no provisions requiring creditors to release, and the only point in which it differs from a common mortgage, is the covenant for the extension of time to the grantor. The difference between a deed of trust and a mortgage is, that in the former no redemption is contemplated by the grantor, whereas, in the latter, a redemption is always contemplated by the mortgagor. Here a redemption is clearly contemplated, and the clause by which possession is to be retained by the mortgagor does not alter the nature of the deed, for such clauses, as well as a power to sell, are usually inserted in such instruments, both in this country and in England. 4 *Kent's Com.*, 146. *Coote on Mortgages*, 325. 6 *G. & J.*, 219. The mortgagor is not liable to the mortgagee for rents and profits. This is his privilege implied from the assent of the mortgagee to his possession, in the absence of a covenant for possession. *Coote on Mort.*, 332. 4 *Kent's Com.*, 164.

Any creditor not a party to this deed could have recovered his debt against the debtor, hence the reservation of the rents and profits could not be in fraud of creditors under the statute of *Elizabeth*.

In Virginia a deed of trust reserving possession to the grantor, even where a release was required, is good, though no redemption by the grantor is contemplated by it. 1 *Grattan*, 274. 10 *Leigh*, 186. 6 *Randolph*, 285.

The execution of such a mortgage as this on personal property, though it may hinder creditors from levying their *fi. fas.*,

has never yet been regarded as such a hinderance, as will render the deed fraudulent under the statute of *Elizabeth*, for the creditor still has his remedy in equity. *Alcock vs. Harris*, 10 *G. & J.*, 226.

A debtor in failing circumstances may prefer one creditor to another; he has a legal, equitable and moral right to do this. 8 *Leigh*, 426, 427. 6 *G. & J.*, 205. 7 *Peters*, 614. 11 *Wheat.*, 98.

Where a deed expressly declares that no one who does not execute it and sign the release, shall receive the benefit thereof, a creditor standing out may still in equity receive the benefit of the surplus. 8 *Leigh*, 294. 7 *Peters*, 615. The provision in this deed, that in case the proceeds should not be sufficient to pay all, to pay Peabody, clearly shows that no fraud was intended.

I shall now notice briefly some of the authorities cited by the counsel on the other side in their brief. In 2 *Kent's Com.*, 534, 535, the author is speaking of deeds requiring releases, and containing reservations to the grantor *out of the proceeds of sale*, and the cases cited by him are not simply cases where the possession, and the rents and profits are reserved as here, but cases where, out of the *proceeds of sale*, large sums are reserved to the grantor—he evidently means onerous, durable and beneficial reservations in favor of the grantor.

In the case of *Murray vs. Riggs*, 2 *Johns. Ch. Rep.*, 580, the absence of a clause requiring a release rendered the deed valid, although there was an enormous reservation to the grantors. In 5 *Cowen*, 554, there was a reservation of a like nature out of the *proceeds of sale*, of more than $2000 for the benefit of the grantor and his family; this deed also contained a power of revocation. The deed in 14 *Johns.*, 464, required a release, contained a power of revocation and appointment to other uses, and was to be void if *any one* of the creditors should refuse to sign it. The case in 1 *Cranch*, 309, only decides that absolute sales are not within the statute and is entirely foreign to the present case. See 3 *Cranch*, 87, 88.

The deed in 11 *Wendell*, 187, required a release from a

certain class of creditors, in order that they might obtain the preference therein provided for, and the question here first arose and was decided, that the mere requiring of a release was sufficient to avoid the deed. This is the strongest case to be found in the books.

The Court of Appeals in this State have not been able to agree upon the bold proposition decided in 11 *Wendell.* They have decided it both ways, but the question does not arise in this case, because no release is required.

2nd. Susan Gamber is spoken of in the deed as a *creditor* of the grantor. The deed upon its face does not show that she is the wife grantor, it merely provides for her debt as for that of any other creditor of the mortgagor. The consideration for a deed of trust need not be a legal claim, for an equitable claim will do. But the prayer concedes that the relation of debtor and creditor may exist between husband and wife—this concession is all we need, for it concedes a sufficient consideration for the deed. This court must decide upon the deed as it stands, and in order to sustain the prayer in the second exception, the court must establish the bold, naked, proposition, that a wife never can be, either at law or in equity, a creditor of her husband—that the relation of debtor and creditor never can exist between them. But the authorities clearly show, that such a relation may exist and may arise after marriage. 2 *Story's Eq.*, sec. 1373. 2 *Roper on Husband and Wife.* 32 *Law Lib.*, 79, 81, *(marg.)* 1 *Gill*, 1.

3rd. Though the deed may be void as to the debt of the wife, (it being a specified sum,) it is still good as to the rest. 5 *Term Rep.*, 424, *Estwick vs. Caillaud.* 6 *G. & J.*, 209, which approves the case of *Estwick vs. Caillaud. Chitty on Contracts*, 536, 537. 9 *Pick.*, 176. 2 *Johns. Ch. Rep.*, 565, 580. 8 *Leigh*, 293. There is no difference between an instrument void under the common law and under the statute of *Elizabeth.* 43 *Law Lib.*, 284. *Smith's Leading Cases.* The statute of *Elizabeth is common law in Maryland.* The deed is good, though it does not convey all the debtor's property. 4 *Meason*, 218, *Halsey vs. Whitney.*

*Wm. Price* for the appellee.

1st. The question is, is this a fraudulent deed as to creditors? and 1st, is it void by reason of the reservations to the grantor himself? and 2nd, is it void by reason of the benefit to the wife of the grantor?

If the proceeds should be sufficient to satisfy the preferred creditors, and there should be a balance, it was to be paid over, with the rent, to the grantor.

This deed cannot be called a mortgage—it is a conveyance, by a man totally insolvent, of all the property he possesses, upon conditions to his creditors, saying to them in effect, if you do not sign you get nothing, if you do not agree to all the terms of the instrument you get nothing. The general creditors are entirely shut out.

The reservation that avoids a deed need not be of something permanent and durable; if it be a *part of the income*, it is sufficient to avoid the deed. 2 *Kent's Com.*, 535, *notes (c) and (d.)*

The condition of creditors in this State, requires that there should be some protection extended to them. Imprisonment for debt has been abolished, the insolvent system has been abrogated, and hereafter all deeds must be sustained or avoided under the statute of *Elizabeth.*

The whole subject as to the validity or invalidity of such deeds, has been fully and most ably argued, in the cases of *Albert and Wife, vs. Winn and Ross,* 7 *Gill,* 446, and *Kettlewell vs. Stewart,* 8 *Gill,* 472, and this court must now decide between those two decisions.

2nd. It is not disclosed upon the face of the deed that Susan Gamber was the wife of the grantor. This fact was proved by evidence *aliunde,* and being so proved, the *onus* of proof was thrown upon the other parties, to show how she became a creditor. Marriage is an absolute gift of all the wife's personal property to the husband, she cannot contract, grant, covenant, or do any other act in law. This being the general principle, and we having shown this woman to be the wife of the grantor in this deed, it became necessary for the

appellants to show that under some special law she was a creditor.

3rd. The deed, if declared fraudulent and void, is killed at once, and entirely, it cannot be dead in part and effectual in part.

*Thos. J. McKaig* on the same side. The statute of *Elizabeth* applies in Maryland, and if a deed is intended to delay or hinder creditors, it is void by this statute. This deed introduces the wife of the grantor simply as Susan J. Gamber, this is an indication that he intended to delay and defraud his creditors. 8 *Leigh*, 415.

It is a deed of trust and not a mortgage. *Coote on Mort.* 69 *Law Lib.*, 50. 6 *G. & J.*, 205, *State vs. Bank of Maryland.* 2 *Ball and Beatty*, 274. The whole question rests upon the intent of the instrument.

The presumption was shifted when it was proved that Susan Gamber was the wife of the grantor, and the appellants then ought to have produced the exception by which a wife could become the creditor of the husband.

There was a reservation of rents and profits for at least six months, which would amount to $10,000, and this added to the $7057 secured to his wife, would be more than the grantor's creditors were to receive. This surely was a sufficient reservation to delay creditors and avoid the deed. 4 *Gill*, 135. Under the statute of *Elizabeth*, it makes no difference whether a release was required or not, provided there be some provision by which the creditors were to be delayed. 2 *Pick.*, 129. All the creditors signing this deed were participators in the fraud, and they cannot take anything from their executing the deed.

If a deed is void in part it is void *in toto.* 4 *Yerger*, 164, 541. 3 *Yerger*, 502. 8 *Yerger*, 417. 9 *Alabama*, 305. 14 *Johns.*, 554. 5 *Cowen*, 548. 2 *Kent's Com.*, 535.

Giving time is delay, and if the intent was to cover up the property for the purpose of delaying creditors, the deed must be void.

*Pearré* in reply. The great point contended for on the other side is, that the surplus is to be paid over to the grantor. But suppose this provision was stricken from the deed, the effect would still be the same, for the residue would go to the grantor by operation of law—it is in effect a mere resulting trust for the benefit of the grantor—it is not to be secured to him so that his creditors cannot reach it. Every creditor could pursue this balance after it came back to the hands of the grantor.

The bond given was to be held as a mere security for the delivery up of the property and for its proper use, and so far from being a badge of fraud, it is on the contrary an index of care on the part of the trustees.

It makes no difference whether the party was insolvent or not. Outside of the insolvent laws of this State, he had the perfect right to prefer one creditor to another, and no question is raised on the insolvent laws in this case and none can be. 6 *G. & J.*, 218, 219.

It is a mistake to suppose that because the effect of an instrument is to delay creditors, it is therefore void, it must be made with a *design* and *intent* to defraud and delay creditors. 5 *Term Rep.*, 33, shows what sort of preferences make a deed void under the statute of *Elizabeth*. 2 *Johns. Ch. Rep.*, 289. 1 *Bald. C. C. Rep.*, 359. There must be *covin* or *collusion* participated in by both parties, in order to avoid a deed under this statute of *Elizabeth*. Though the grantor may have conceived the design of defrauding his creditors, yet if the grantees do not participate it will be good. The 6*th sec.* of 13 *Elizabeth*, requires both parties to concur in the illegal design. 7 *Pet.*, 393. 4 *East*, 1, 13. Though the trustees may participate in the illegal design, yet the *cestui que trusts* will thereby be implicated and their rights affected. 11 *Wheat.*, 78. The title of the trustees is good as to all honest *cestui que trusts*, and void only as to those who are fraudulent. The case in 1 *Plowden*, 54, depends entirely upon the doctrine of *covin*. 3 *Coke*, 78. If all the *cestui que trusts* had joined in the fraud or *covin*, the deed would have been void, because

the beneficiaries were fraudulent. If these creditors had been secured by separate deeds, those only would have been void which were made in *covin.* The statute of *Elizabeth* was enacted in affirmance of the common law. 43 *Law Lib.*, 38. *Smith's Leading Cases. Twyne's Case.*

If the trusts are only in favor of those who can execute a binding covenant, and Mrs. Gamber was unable to make such a covenant, then there was no trust in her favor and the deed will stand. But the deed does not profess to provide except for those who signed it. A fraud intended but not carried into execution, does not vitiate a deed.

But it is said there is here a reservation of the *income,* as stated by *Kent.* But *income* means something arising from previous investments—here the grantor was obliged to work, and from his own labor procure the means of subsistence—this is not income. In the case in 2 *Pick.*, the deed was imperfect, being signed only by the grantor and trustee, when it was intended to be of three parts. 5 *Cowen,* 553.

Lastly, this deed ought to be decided upon Virginia law, for Virginia was the *lex loci contractus.* The question arises, not upon the validity of Trieber's debt, but upon the validity of the deed, which, if good at the place of its execution, is good everywhere. 2 *Kent's Com.*, 458, *note (b.)* The *lex rei sitæ* does not apply in such a case as this; the goods here conveyed were situated in Virginia. 3 *G. & J.*, 244. The laws of Virginia may be proved to this court by the decisions of their adjudged cases. 4 *Philips on Evidence*, 1142.

Tuck, J., delivered the opinion of this court.

The opinion on this appeal has been delayed at the request of counsel in the case of *Sangston vs. Gaither*, in which some of the questions presented by this record were said to arise. The court were disposed to accede to this request, in view of the contrariety of decisions in other courts in which assignments for the benefit of creditors had been contested, and, especially, because of the embarrassing fact, that although the subject of such assignments had been three times before

the Court of Appeals of Maryland, the ultimate judgment was rendered by three of the judges only, the others being of the opposite opinion, by which the question then under review was left, as it was in the first of these cases, *in equilibrio*. Having carefully examined the authorities referred to in both cases, with the general principles applicable to the subject, we proceed to express our views upon the exceptions in this cause.

John Gamber being indebted to the appellee, an attachment was issued and levied on certain personal property, which had been conveyed, with other personal and a large real estate in Virginia, to the appellants, as trustees. This deed was executed in Virginia, where the grantor and the trustees resided, and where all the property then was. In the progress of the cause the appellants came in, by petition, and claimed to be the owners of the property on which the attachment had been laid, in virtue of this conveyance. The plaintiff proved his debt, that Gamber was a non-resident, that he was insolvent at the date of the deed, and that he thereby conveyed all his property. The court below decided that the deed was void as against creditors, on account of the reservations in favor of the grantor.

This conveyance recites Gamber's indebtedness to Samuel Brady, and to other parties of the third part named in the deed, and his desire to secure the payment of said debts to Brady, and to such of the other creditors named in the deed as should sign the same. The property is conveyed to the appellants in trust, for the following purposes:

1st. To permit the grantor to hold possession of all the property, real, personal and mixed, to take the rents, issues and profits, and to possess and enjoy the use and benefits thereof, paying no rent therefor, until a sale should be effected according to the provisions of the deed, the grantor giving bond, with security, for the delivery of the property at the day of sale, which bond was to be held on the trusts declared in reference to the property.

2nd. That if the grantor should not pay to Brady, in three

semi-annual payments, the debt due to him, and to such of the other parties as should sign the deed, in four semi-annual payments, the amounts due them, and all costs and commission, the trustee should sell the property, and (if the proceeds of sale proved sufficient,) pay Peabody & Co., then Brady, and such other of the parties of the third part as should sign the deed, and the balance, if any, to pay over to the grantor himself. There is no time limited within which these creditors are required to signify their assent by signing the deed.

3rd. If the proceeds of sale should prove insufficient for the above purposes, then to pay a certain claim of Peabody & Co., and to distribute the residue ratably to Brady, and such other of the creditors named in the deed as might sign the same.

4th. The deed to be void if Gamber should pay all the debts mentioned in the deed, with costs, commission, &c., &c.

5th. The creditors named in the deed, by signing the same, covenanted and agreed with Gamber to extend to him a credit of six, twelve, eighteen and twenty-four months on their respective claims, subject to the power to sell in case default should be made in paying these instalments as they might fall due.

It will be observed that this deed does not stipulate for releases from the creditors who might sign. In this respect it differs from the instruments which were the subjects of controversy in the cases of *McCall vs. Hinkley*, 4 *Gill*, 128; *Albert and Wife, vs. Winn and Ross*, 7 *Gill*, 446, and *Kettlewell vs. Stewart*, 8 *Gill*, 472, to which allusion has been made. But the grantor reserves to himself the possession and enjoyment of all the property for at least six, perhaps for twenty-four months, and, indeed, for an indefinite time, if the trustees should not think proper to sell, and none of the preferred creditors should require the sale to be made. He also reserves to himself the surplus, after payment of the claims of the assenting creditors, and of Brady, (whose assent is not required,) to the exclusion of all other creditors, who can in no event obtain any part of their claims by the provisions of

the deed, and these benefits, confined as they are to such of the named creditors as might assent, are extended to them only on the condition that they will, while the debtor is using and enjoying the property, grant further time on their claims against him.

Various questions have arisen in the courts of the several States upon the construction and effect of assignments of this description. The contest, however, has been carried on, principally, between those who affirm and those who deny the validity of preferential deeds requiring releases, as one class of such instruments has been designated in this court. 8 *Gill,* 506. With whatever force of argument or weight of authority these have been sustained, there is little difference among the authorities, as to the necessity of the debtor's conveying all his property for the benefit of his creditors. And although there are cases in which deeds, reserving a part of the property or the whole, for a limited time, for the use of the grantor or his family, have been held to be valid, yet much the greater number of decisions have condemned them as fraudulent and void. Those in which partial assignments have been thus stigmatized, have but asserted a plain principle of justice—that a debtor, confessedly unable to pay his debts, when he asks to have his future earnings released from liability, must accompany this appeal to the humanity of his creditors, by a tender of all the property that he has, and that if he wishes to retain any portion for the benefit of himself or family, it must be done with the assent of all those who have a just and legal claim upon it; because if a debtor can rightfully coerce his creditor into releases of this kind, it must be on the principle that the statute of *Elizabeth* does not operate on one's time and future labor, but only devotes that which is the subject of assignment—his property—to the payment of his debts, and protects that only from being placed beyond the reach of his creditors by fraudulent conveyances; and that, therefore, while exercising his undoubted right to prefer some creditors to all the others, by paying them in full or by assigning property in satisfaction of their claims, he may so

discriminate as to protect his future earnings, provided he parts with all that he has.   5 *Rawle*, 221.

It is not our purpose to examine the decisions on this point. The subject has been elaborately discussed in most of the States, and in none with greater ability than in the late Court of Appeals.   It is much to be regretted that a difference of opinion among the judges should have left so material a question unsettled, and it is because the subject has been fully argued before us, and the counsel in both cases have suggested the importance to the public of having it settled, whether assignments, as common as those are said to have been in this State, are valid or void, for the reasons assigned in those cases, that we feel warranted in saying, that hereafter, as to deeds presenting the question which we understand to have been before the Court of Appeals, we shall follow the decisions in 4 *Gill* and 8 *Gill*.   The first of these was decided in 1846, since when the same question arose in 8 *Gill*, and in the Circuit Court of the United States, in the case of *While, Warner & Co., vs. Winn and Ross*, in which Chief Justice Taney delivered the opinion of the court, affirming the validity of the same deed which the Court of Appeals, in 7 *Gill*, declared to be void.   These decisions have probably induced the belief, with the community and the profession, that such conveyances would thereafter be sustained, and it is not unlikely that, under this impression, much property is now held by titles of this kind.   These considerations, and the state in which we find this question in Maryland, are, we think, of sufficient weight to render unnecessary a re-examination of the principles on which the doctrine adverted to has been maintained.   We, therefore, content ourselves with recognising the law as declared in the two cases to which we have referred, as more conducive to the public interest, than that these decisions should now be disturbed.

The deed before us does not require releases from the assenting creditors, and it was on this ground, as we understood the appellants' counsel, that he mainly contended that it is valid; because, as he urged, most if not all such instruments

which had been declared void, contained this coercive stipulation, while others have been sustained, notwithstanding the possession of the property was reserved to the grantor. Several cases were referred to in support of these positions, and especially that of *Estwick vs. Caillaud,* 5 *Term Rep.,* 420. This decision has been remarked upon in many of the cases in which the subject has been presented; efforts have been made to lessen its authority, on various grounds, and judges have sought to avoid its effect, either by denying its authority or by distinguishing it from the cases before them. See Senator Colden's opinion, in *Mackie vs. Cairns,* 5 *Cowen,* 569, and Ch. J. Savage's, *same case,* 583. It will be found, on comparing this deed with that in 5 *Term Rep.,* as explained by the judges in their opinions, that in terms and effect they are very different. The names of the creditors were mentioned as here, but the trust was created with the assent of the creditors themselves, and after he had offered payment, out of other property which he retained, to the creditor in whose behalf the deed was contested. It required no release from any of the creditors, it did not exclude any for dissenting, nor impose conditions or restraints of any kind upon them. It was the case of a debtor securing a portion of his creditors for the full payment of their claims, ultimately, and leaving other property to pay other debts. This was the view taken of the case by Savage, Ch. J., in 5 *Cowen,* 583. See 1 *Hopkins,* 397. We do not deem this case as entitled to the authority, on the present appeal, ascribed to it by the appellants' counsel, for it is manifest that there are several stipulations in the deed of Gamber, which do not appear in that of Lord Abingdon, and which, in our opinion, render it void.

The appellants' counsel has also referred to the cases of *Rose' Adm'x, vs. Burgess,* 10 *Leigh,* 186. *Claytor vs. Anthony,* 6 *Randolph,* 285, and *Kevan vs. Branch,* 1 *Grattan,* 274. The deed in the first of these cases was executed by an administrator, to indemnify the sureties in his official bond; and the property might, without objection, remain with the

grantor until it became necessary to take it for the purposes of the trust.

In the second the deed was for personal property to secure a particular debt, with power in the trustee to sell, and did not, in any sense, partake of the character of an assignment for the benefit of creditors.

The last of these cases, however, is very much like the one before us, as respects the reservation of the property to the grantor, and does sustain the view taken, on the part of the appellant, of this branch of the case. But there is no opinion of the court, nor statement of the grounds of the decision; under which circumstances, and being opposed by nearly all the cases in which the subject has been discussed, we cannot acknowledge its authority.

The counsel for the appellant has also relied on the case of *Halsey vs. Whitney*, 4 *Mason*, 218, to show that the assignment need not transfer all the debtor's property. It was suggested at the bar that the debtor had no other property; but Judge Story did not deem it material, in that case, to introduce the fact by amendment of the pleadings. The only reason assigned by the judge is this: "But if he has other property, then the presumption of fraud is less cogent; for a debtor, conveying part only of his estate to certain privileged creditors, does not thereby necessarily impair the rights of other dissenting creditors. The argument has generally come from the other side, as repelling any inference of fraud, such was the reasoning of *Estwick vs. Caillaud*, 4 *Term. Rep.*, 420, and *Wilkes vs. Ferris*, 5 *Johns. Rep.*, 335." We have shown the character of the case, in 4 *Term Rep.*, 420, and that it does not in our opinion, apply to cases like the one before us. The case in 5 *Johns.*, 335, also referred to by the learned judge, was decided on the authority of *Estwick vs. Caillaud*, and has been followed by scarcely any case in New York, since, while most of them have adopted the opposite doctrine.

It is worthy of remark, also, that Judge Story in deciding *Halsey vs. Whitney*, sustained a deed exacting releases from the creditors, against his own judgment, upon the authority

of cases, in which it was held that the transfer of all the debtor's property is necessary to the validity of such assignments.

In the case of *Riggs vs. Murray*, 2 *Johns. Ch. Rep.*, 565, Chancellor Kent pronounced against a deed which reserved to each of the insolvent grantors two thousand dollars per annum, for the support of their families, until the creditors executed releases, or until one year after they were discharged by law, for the reason that this and other conditions were onerous and oppressive to creditors, using in his opinion (page 582,) this language: "If an insolvent debtor may make sweeping dispositions of his property to select and favorite creditors, yet loaded with such durable and beneficial provisions, for the debtor himself, and incumbered with such onerous and arbitrary conditions and penalties, it would be impossible for courts of justice to uphold credit, or to exact the punctual performance of contracts." This decree was subsequently *(15 Johns., 571,)* reversed by the Court of Errors. Afterwards Ch. J. Spencer, in sustaining a similar deed, *(20 Johns., 447, Austin vs. Bell,)* on the authority of this case, said. "We are bound by that decision," (the decree of reversal,) "*whatever our private opinions may be as to its accuracy and solidity.*" Later decisions in the courts of New York have gone so far in vacating deeds containing such reservations to the grantor, that Chancellor Kent, in his *Com.*, 2nd *Vol.*, 535, *note*, says, that the decision of the Court of Errors, in *Murray vs. Riggs*, may be considered as justly exploded. *Mackie vs. Cairns*, 5 *Cowen*, 547, was a deed reserving $2000 per annum for the benefit of the grantor, until he should be discharged from his debts. *Colden, senator*, thus states this case: "Mr. Cairns being insolvent, assigned, by several instruments, all his property to S. and L., in trust, that they should allow him out of the proceeds, or out of the rents and profits, $2000 a year, till he should be discharged from his debts, but the allowance was not to extend beyond four years; and upon the further trust, that the residue should be distributed among certain of his creditors." This is not very dissimilar to the deed before us, the material difference

Green and Trammell, *vs.* Trieber.

is, that here all the property, with the income and profits, is reserved to the grantor, for six, twelve, eighteen or twenty-four months, according as the debtor might or might not meet his engagements in the deed, with a reservation, after paying certain debts, of the entire residue to himself. In the one case the creditors would receive payment out of the income after deducting the $2000, annually; in the other they could get nothing, however large the profits might be, until the time specified in the assignment. There was no release required, nor other provision to coerce the creditors, nor any reservation of the residue. Of that deed, however, Senator Colden said: "Here then is a conveyance by which an insolvent debtor reserves to himself, out of his property, such revenue as he sees fit, for such time as he thinks will suit his convenience; and when his creditors, who are not among those he has chosen to favor, and who are dissatisfied, obtain an execution against his estate, they find in their way a conveyance which not only hinders them from levying their debt, but secures the property, in part at least, to their debtor. If there be such a thing as natural equity; if we may ever appeal to those perceptions of right and wrong, which are independent of all learning, it seems to me that we may do so on this occasion, and cannot hesitate to decide that such a disposition of property is invalid." And Savage, Ch. J., in the same case, says, (580:) "Suppose the debtor finding himself in failing circumstances, had conveyed the whole of his property to assignees, in trust for himself, could there be a question on the subject? An insolvent will not be permitted thus to defraud his creditors, and mock the insulted majesty of the laws. When a debtor fails, either from misfortune or folly, or from dishonest motives, his property, in moral justice, belongs to his creditors. He is permitted to prefer in payment such creditors as he pleases. This is giving him power enough, but when he appropriates the property to his own use the act becomes fraudulent." "If he may take to his own use $2000 a year, why not $5000? And if for four years, why not for ten or even twenty? To state such a proposition is a sufficient refutation. It offends the

moral sense; it shocks the conscience and produces an excla-
mation.   It is directly against the statute and cannot stand
before it."   See also *Goodrich vs. Downs*, 6 *Hill*, 440.   The
*Commercial and Rail Road Bank of Vicksburg* made an as-
signment of its effects to trustees, with authority to collect all
debts due, to complete the railroad, for which purpose they
were authorised to borrow $250,000, to allow claims against
the bank, and out of the proceeds, first to pay the loan, to
pay the trustees $8000 per annum, each, and to distribute the
balance ratably among creditors who should file their claims
against the bank.   The Supreme Court (7 *Howard*, 276, *Bod-
ley vs. Goodrich*,) said: "Upon its face, this deed shows an
intention by the bank to postpone its creditors, use the effects
of the bank for the completion of the railroad, pay the trustees
enormous salaries, and make no dividend among the creditors
of the bank until these objects were accomplished," and de-
clared the assignment to be void.

  And the same law prevails in Virginia, whose courts sus-
tain assignments requiring releases from creditors.   In *Skip-
with vs. Cunningham*, 8 *Leigh*, 290, Judge Tucker says, in
speaking of assignments requiring releases: "On this subject
a distinction has been made in the cases, between the con-
veyance of the *whole* and the conveyance of *part* only of the
debtor's property, upon condition that the creditors should
compound and accept a part of their debts, and give releases
for the residue.   The former is considered admissible and
valid, the latter as oppressive upon the creditors, and as fraud-
ulent and pernicious in its tendencies.   The English cases are
all founded upon the *concessum* of the principle, that such
compositions are lawful, where the party has conveyed the
*whole* of his property, and there is no concealment or un-
derhand agreement with particular creditors."   And in *Mc-
Cullough vs. Sommerville*, 8 *Leigh*, 428, the same court said:
"There is no evidence of fraud, nothing to show an intention
to withdraw the effects of the firm from the creditors.   On the
contrary the whole property, of every kind and description,
not only of the firm, but of the individual partner, McCul-

lough, is conveyed, thus stripping himself and the firm (so far as the grantor could,) of every atom of property, and subjecting it to the payment of the creditors named." The same doctrine is maintained in 13 *Louisiana*, 454, *Graves vs Roy. The Watchman, Ware,* 232.   5 *Johns. Ch. Rep.,* 229.   14 *Johns.,* 458.   6 *Binny,* 338.   2 *Pick.,* 129.   2 *Comstock,* 365.   17 *Vermont,* 310, 390.   6 *Hill,* 440.

And in Pennsylvania, where also assignments for the benefit of creditors and stipulating for releases, are held to be valid, it has been decided, that conveyances of this kind by partners in trade, must transfer all the separate estate of the individual partners, as well as the effects of the firm.   *Thomas vs. Jenks,* 5 *Rawle,* 221.   *Hennessy vs. Western Bank,* 6 *Watts and Serg't,* 300.   In the last of these cases it is said: "A debtor cannot make a reservation, at the expense of his creditors, of any part of his income or property, for his own benefit, nor can he stipulate for any advantage either to himself or family;" which Chancellor Kent, in his *Com.,* 2nd *Vol.,* 535, also states to be the result of the authorities.

And so where deeds reserved to the grantor the power of making leases, or of revoking or altering the trusts, or of charging the estate, or gave the trustees power to change the order of preferences, they have been held to be void.   2 *Johns. Ch. Rep.,* 579, 580.   *Tarback vs. Marbury,* 2 *Vern.,* 510.   4 *Barb., S. C. Rep.,* 539, *Strong vs. Skinner.*   9 *Gill,* 216, *Beatty vs. Davis.*

And however the judges of the Court of Appeals may have differed in the cases to which allusion has been made, on the question then before them for decision, it is manifest that they sanctioned this doctrine.   In 4 *Gill,* 136, Dorsey, J., says: "It was admitted in the discussion of this case, (and such is the principle established by a current of authorities,) that if the assignment contain but a part of the property of the debtor, or if before the full payment of the entire claims of creditors, any part of the property assigned be reserved to the debtor, such an assignment is fraudulent and void."   And Magruder, J., page 158, says: "The deed, it is true, must not be so framed as to keep the property in the power of the debtor."   And

Frick, J., (7 *Gill*, 478,) says: "The assignment is conceded to be void, if there be any reservation in it for the benefit of the debtor." See also 8 *Gill*, 502. 9 *Gill*, 211.

We must observe the distinction between conveyances of the whole or a part of the debtor's property, as a security for particular debts, on an agreement with the creditors for further time, and voluntary conveyances by debtors for the payment of their debts; the latter the law presumes to be executed with reference to the benefit of the creditors, and not to the advantage of the debtor, further than the exaction of releases, where such a provision is allowed without avoiding the deed. In one class the object is to gain time for the debtor by agreement with the creditor, in which it is quite consistent with the nature of the transaction that the former shall keep possession. In the other the debtor offers his property to his creditors in payment of their claims, or for distribution according to such priorities as he may prescribe. Payment being the professed object of the assignment, it must not contain any provision to defeat or hinder this purpose, beyond such reasonable delay as may be incidental and necessary to the proper execution of the trust. *Hart vs. Crane,* 7 *Paige,* 37. 4 *Wash. C. C. Rep.,* 235, 237.

Applying these principles to the deed under consideration, we are brought to the conclusion that the court below committed no error in condemning it as void. If it be regarded as an assignment for the payment of his creditors, on terms proposed by the grantor, it cannot be sustained, because, instead of passing the property over to the trustees for the benefit of the creditors, it is retained by the debtor himself for six, and perhaps for twenty-four months, and indeed for so long a time as the trustees may deem proper, provided none of the assenting creditors require the sale to be made. During this time the property would be protected from process issued at the instance of the other creditors, as well those not named in the deed, as those who were named and might not accept its terms. It is not a satisfactory answer to say, that the income and products of the property would be liable, in

the meantime, to be seized under such process.   It does not appear what would be the character of these products, whether liable to execution or not.   Besides, we are ascertaining and dealing with the intent of the party in making the deed, and not whether a remedy was or was not open to the other creditors.   4 *Mason*, 227.   A debtor cannot rightfully put his property beyond the reach of creditors, and turn them over for their debts to the rents and profits, uncertain in quantity and fluctuating in value; nor has he a right to transfer his property and substitute his own bond in its place, as in this case.   The law makes one's property liable for his debts, and even if the bond should be as good as the property, this does not affect the question, because the effect of the arrangement is to change the property, and to frustrate and defeat the recovery of just demands by pursuing it.

If it be regarded as a security in the nature of a mortgage, as was insisted on the part of the appellants, it is equally objectionable; because, if the equity of redemption relieves this deed from the imputation of fraud, we cannot perceive that it would not have the same effect in other deeds which would be fraudulent without it; and thus a clause which secures to the debtor no right that he would not otherwise possess, and which is, therefore, wholly unnecessary, would give effect to an instrument that would be void but for its insertion.   But this right to redeem is to be exercised, not as to all the debts named in the deed, but, only, as to such of the creditors as may assent to its provisions.   By this means, the debtor, in his efforts to retain the use of the property, seeks to coerce his creditors to sign the deed by a double motive—the security and preference offered, and the hope, which this provision is calculated to excite, that he really intended and would pay the debts from the rents and profits of the estate—and if the object of the debtor was, as we must now assume, to secure his creditors, he had no right to subject them to the alternative of agreeing that he should have further time, and pay by instalments prescribed by himself, as the price of the security offered, or lose all benefit of his property, and chance of be-

ing paid in that way, in case it should require the whole to satisfy those who might assent to the deed. The effect is to gain time by coercing the creditors who may come in, and to hinder and delay those who may refuse the terms of the deed, as well as those not provided for. If it be asked, why not allow a debtor craving time on security offered, to prescribe terms, as well as one who is making a general assignment, to stipulate for releases? the answer is (as before observed,) that the character and design of the instruments are not the same. In one class of these deeds satisfaction to the extent of the whole property is proposed; in the other indulgence is demanded by the debtor, and many persons would be willing to compound with their debtor, at once, for a fair proportion of the assets, and take what he can pay, who would not grant further time, stipulated by the debtor to suit himself, on an uncertain security, the debtor in the meantime to have the use and enjoyment of the estate, however large the profits, without applying any portion thereof to the reduction of the debts while the security may be daily depreciating. And, besides, this indulgence cannot be demanded at the option of the debtor, and on his own terms. If he may thus restrain his creditor for six months, he may as rightfully do so for as many years. The law does not tolerate any hindrance in assignments for the benefit of creditors, beyond what may be reasonable and necessary to the purposes of the trust. Thus if no time is named, as in this case, within which the assent must be given, or if the time be unreasonable, the deed cannot stand. 4 *Wash. C. C. Rep.*, 235, 237.

The argument, that a party may be honestly endeavoring to pay his debts, and that for that purpose and to support his family, the property should be allowed to remain in his possession until default in paying the instalments, was well answered by the chancellor in 1 *Hopkins*, 403. "It is now urged that the support of the grantor, from his own estate, is an object, which if not lawful is at least so reasonable, as to entitle these provisions to some favor. This object is clearly illegal. The fundamental principle of law and justice, is, that all the

property of an insolvent debtor, should be applied to the discharge of his debts.   If the debtor may want sustenance so also may the creditor, and if one of them must suffer, the misfortune must, according to law and morals, fall on the debtor. But if it is reasonable that some moderate portion of the property of an insolvent debtor, should be allowed for his sustenance, what shall be the allowance, and by whom shall it be made?   Shall the debtor, finding himself insolvent, determine both for himself and his creditors, what allowance will be reasonable or convenient for his own wants, and the period during which he shall be maintained from his own estate? Can an insolvent debtor, first set apart a portion of his estate for himself, and leave the residue for his creditors?   Is it law, that every insolvent debtor in this State may, by assigning all his property in trust, secure to himself an allowance for two thousand dollars a year, or any other sum, from his own property? Reservations for the support of the insolvent debtor  must be treated like any other reservations of his property for his own use; and all such are void against creditors."   These assignments must be made in good faith, for the purpose of paying debts, and without any intent to lock up the property from other creditors, for the use of the debtor.   A conveyance by the owner to another in trust for himself, is in effect a conveyance to himself.   Such a measure never can be necessary for any honest purpose, and the grantor, in such a deed, can, in the general course of human conduct, have but one motive, and that must be to defeat or hinder the claims of others.

There is also, in this deed, a reservation to the grantor of the surplus that might remain after paying the assenting creditors.   It is unnecessary to examine this question, in this opinion, as it is presented in two aspects in the case of *Sangston vs. Gaither*, in which the authorities particularly applicable to this feature of the assignment are cited.   We there decide that such a reservation avoids the deed.

The counsel for the appellants suggested that the circumstances attending the transaction should have been left to the jury, before whom the question of fraud could better have

been inquired into. There is nothing for that tribunal to pass upon, when the court can see that the instrument is fraudulent on its face. We are to look to the character with which the law stamps the deed, without reference to extrinsic facts as to motive. If the law imputes to the grantor a design in making the deed, no evidence of intention can change the presumption. Here is a creditor, with process in his hands, contesting this conveyance. We see that by it the debtor has attempted to place his property beyond the reach of this process, upon certain trusts in favor of himself. If the law declares such deeds to be void, it is no matter how the question of fraud in fact may stand.

It is said, also, that the laws of Virginia must govern this case, according to which the deed would be treated as a mortgage. There is no evidence before us of what the foreign law is. The mode of such proof is stated in *Gardner vs. Lewis,* 7 *Gill,* 377.

From the view taken of this conveyance, under the first exception, it is unnecessary to express any opinion on the points arising under the second.

*Judgment affirmed.*