WILLIAM H. KEIGHLER ET AL
vs.                              } DECEMBER TERM, 1853.
JACOB C. NICHOLSON ET AL.

[ASSIGNMENT IN FAVOR OF CREDITORS—SEQUESTRATION—JURISDICTION.]

AN assignment in favor of creditors, though in other respects free from objection, must convey all the property of the grantor, and the *onus*, in this regard, is upon the party who sets up the deed.

A deed in favor of creditors, of specific articles of property, and which does not, by express terms, purport to convey all the property of the grantor, is not, on *that account*, absolutely *void*, but upon proof that the grantor had no other property, will stand, if its other provisions are legal.

The adjudicated cases in this state have not decided that an assignment in favor of creditors, which provides that the dividends of the non-assenting shall be divided proportionably among the assenting creditors is void.

It would be irregular to decide upon the validity of such a deed upon the return

of a writ of sequestration, to enforce a decree, when no such question was presented in the case in which the decree was obtained.

Where a *chose in action* is in the hands of a third party, who is willing to abide by the order of the court, or who admits it to belong to the person against whom the writ of sequestration has issued, the court will consider it liable to sequestration, and will order it to be paid into court.

But where the amount or title of the party whose property is sequestered, is disputed by the person holding the *chose in action*, the court cannot make an order upon him; it is only in a *clear and simple case* that a sequestration can be enforced by order.

A writ of sequestration was laid in the hands of a party who denied that the money belonged to the party against whom the writ issued, and set up a deed from such party, conveying the *choses in action* to him in trust, and his proceedings in the Superior Court of Baltimore city for the administration of the trust. HELD—

That under these circumstances, it would be wrong in this court to authorize the institution of proceedings at law or in equity to enforce the sequestration.

If the Superior Court had jurisdiction over the subject matter of the trust, however irregular the proceedings may have been, they cannot be regarded as *coram non judice* and void, nor can the irregularities be revised by this court.

The decision of a court of competent jurisdiction, when coming incidentally in question or offered as evidence of title in another court, is conclusive of the question decided, no matter how irregular or informal the proceedings may be, or what mistakes or errors the court may make in the matter adjudicated.

---

[The facts of this case are fully stated in the opinion of the Chancellor, delivered on the 9th of March, 1854.]

---

THE CHANCELLOR:

The complainants in this case, obtained on the 13th of May, 1851, a decree against Royston Betts for a large sum of money, and on the 6th of September following, they filed their petition in which, as to such portions of said decree as by the terms thereof were then due and unpaid, they prayed that writs of sequestration might issue to the sheriffs of Baltimore city and Alleghany county, to sequester the property and effects of the defendant in their respective bailiwicks.

The writs were ordered on the same day, and that directed to the sheriff of Baltimore city was returned, laid on the 16th of September, 1851, in the hands of the agents of several insurance companies, and also in the hands of William J. Ward, Esq. Subsequently, on the 22d of April, 1853, the complainants filed

another petition in the cause in which, after reciting the issuing of the writ, and the proceedings upon the first petition, they allege that at the date of the service of the former writ of sequestration, Ward and the corporations had moneys in their hands of said Betts, which should have been applied in satisfaction of their decree, and that since the return of the writ, the corporations had paid all moneys in their hands of said Betts to said Ward, and that the latter was about to apply the same to other purposes upon the ground that as the moneys were not in his hands at the date of the service of the writ, he was at liberty to do so ; whilst the petitioners insist that as said moneys were in the hands of said corporations at that time, and were paid to Ward, with notice of service, they are bound in his hands as fully as they would have been in the hands of the corporations. And then, in order, as the complainants say, to conclude all questions on the subject, they pray for another writ of sequestration, and further that said Ward may be required to set forth what moneys and effects of said Betts are in his hands, and how and when received, and that he may be required to bring the same into court to be applied in satisfaction of the decree.

The writ was ordered to be issued on the same day, and by the same order, Mr. Ward was required to answer the petition by a day named. The writ issued and was laid in the hands of Ward on the 27th of the same month and year, and on the 17th of May following, he filed his answer.

In this answer, after admitting the decree, he submits a copy of a deed of trust, executed by said Betts to him, and a copy of his report, as trustee, made to the Superior Court of Baltimore city, and of the order of said court, and notice to creditors, in pursuance thereof, and then proceeds as follows : "That respondent had supposed, and yet believes, that the original writ of sequestration was issued after the execution and perfecting of the deed of trust to him." "And he submits, such being the case, the course adopted by him, as trustee, preparatory to distribution, in pursuance of the provisions of the deed, was right and proper, and that such distribution ought to be made," and he then asked to be heard in the premises before the court should finally act.

In this report referred to, which was filed in the Superior Court on the 6th of January, 1853, the amount of money in the hands of the respondent is stated, and the sources from which derived, and the charges to which the trustee supposed it to be subject, and it concludes with expressing a desire that the trust should be administered under the supervision of the said court, and prays that notice to the creditors of Betts may be given preparatory to a distribution. Upon this report the Superior Court passed an order directing notice to be given accordingly to the creditors, on or before a day therein limited.

The deed from Betts to Ward referred to, and filed with his answer, bears date the 29th of January, 1851, and conveys to Ward, in trust, four policies of insurance, and the moneys to be recovered upon them. The deed recites that suits were then depending upon them in the Circuit Court of the United States for the Maryland district, and the trusts are:

1st, that the trustee shall apply the money, when received, to the payment of necessary expenses, including counsel fees, as agreed with the attorneys. 2nd, to the payment of commissions to the trustee. 3rd, to the payment of $3,000, with interest from the 2d of December, then last past, to Richardson, Watson & Co., of New York, and the residue to divide, without preference, among all the other creditors of said Betts who may come in and release, as hereinafter stated, according to their respective claims, provided that each of said creditors receiving a dividend under the deed should, at the time of receipt, execute and deliver to said Betts a sufficient release in full of his demand, and in case of refusal of any of said creditors so to release the distributive share of the party so refusing, to be divided proportionably among the assenting creditors.

Shortly before, and during the argument, Mr. Ward moved to quash the sequestration, so far as it related to him, upon the ground, among others, that he has no property or effects of said Betts in his hands, bound by the writ, and had none such when it was issued to which Betts had any claim. And the first question presented is, whether the deed from Betts to Ward, before mentioned, is so utterly and absolutely void as to subject the

property assigned by it to the trustee, to the claims of the complainants under the proceedings in this case.

The deed is of certain specific parcels of property, being four policies of insurance, and the moneys demandable under them. It does not upon its face purport to convey the whole of the property of the grantor, nor does it profess to be only of a part. These policies may or may not have constituted all his property, and therefore assuming that deeds of this character are void unless they embrace all the property of the debtor, there is nothing upon the face of this instrument which, by construction of law absolutely condemns it. Looking to the cases of *Green and Trammell* vs. *Trieber*, 3 *Md. Rep.*, 11, and *Sangston* vs. *Gaither*, *ib.*, 40, it can no longer be a question in this state, that a deed made by a debtor for the benefit of his creditors requiring releases, even though in other respects free from objection, must convey all the property of the debtor, and a reference to the case last referred to, will show that the *onus* in this regard is upon the party who sets up the deed.

The deed in *Sangston* vs. *Gaither*, like that in this case, was of certain specified property. It was not apparent upon its face whether it did or did not convey the whole of the grantor's property, and the court say, that question is left in doubt by the case stated, and I think it is quite manifest that if it could have been shown, *dehors*, the deed that the property conveyed by it constituted the whole estate of the grantor, and there had been nothing objectionable in its trusts, it would have been maintained as a valid instrument. But the deed in *Sangston* vs. *Gaither* was pronounced to be void, not merely or principally because it was not shown to embrace the whole property of the grantor, but because of its reservations for the use and benefit of the grantor himself.

It, therefore, appears to me that though the deed in this case is of specific articles of property, and does not, by its express terms, purport to convey all the property of Betts, it is not on that account absolutely void, but upon proof that the grantor had no other property, it would stand if its other provisions are legal.

Now, with reference to the trusts of this deed, the adjudicated cases in this state do not apply. It does not provide that the dividends which would otherwise belong to the creditors who should come in and release, shall, on their refusal, be paid back to the debtor, or enure to his benefit, but that such dividends shall be divided proportionably among the assenting creditors, and in this respect differs from the decided cases in this state. It might, therefore, be unsafe to say that the trusts of this assignment absolutely condemn it, and I apprehend it would be irregular to pronounce judgment upon it in this case, and under the proceedings by which the question is presented.

The petition asking for the sequestration makes no mention of the deed, and, of course, does not assail it as fraudulent against creditors. It appears for the first time in the cause with the answer of Mr. Ward, who introduces it as evidence of his right to receive and disburse the money collected from the insurance companies, and as the foundation of his proceeding in the Superior Court. No issue has been made upon the deed ; no opportunity given to the parties claiming under it to remove by proof, if they can, the objection that it is but a partial conveyance of the grantor's property. But this important question, involving matters of fact and of law, must be decided (if at all) upon the return of a writ of sequestration, thus making process issued in execution of the decree of this court the foundation of a totally new, and perhaps doubtful controversy. It appears to me it would be irregular and most inconvenient thus to engraft upon one cause a new litigation involving the rights of other parties, and presenting questions entirely distinct from those which arose in the first suit.

But apart from the question touching the validity of the conveyance, the trustee has interposed a motion to quash the writ of sequestration, upon the ground that he has not now, nor had he at the time it issued any property or effects in his hands which could be reached by it, and it is insisted by his counsel that the process of sequestration is inapplicable to such a case as this.

It was said by the late Chancellor in *Watkins* vs. *Dorsett*, 1

*Bland*, 533, that according to the English practice, *choses in action* are not liable to creditors, and that they cannot be taken on a *fieri facias*, or under *a sequestration* from chancery, or be at all touched in equity for the benefit of creditors, and most of the cases which have been referred to in the argument before me are cited by him in support of his opinion.

But I apprehend the rule laid down in that case must be taken with some qualification, for when the *chose in action* is in the hands of a third party, who is willing to abide by the order of the court, or who admits it to belong to the person against whom the sequestration has issued, the court will consider it liable to sequestration, and will order it to be paid into court. This is stated to be the practice in 2 *Daniel's, Ch. Pr.*, 1261, after an examination of the cases; but when the amount or the title of the party whose property is sequestered, is disputed by the person holding the *chose in action*, the same author states it to be clear from the cases that the court cannot make an order upon him, and the only question is when the party in possession of the *chose* refuses to admit or dispute his liability, whether the court will authorize the institution of proceedings at law or in equity, for the purpose of enforcing the sequestration. This point is said still to remain undecided. 2 *Daniel's, Ch. Pr.*, 1262.

In *Hoffman's Ch. Pr.*, 157, 158, it is said to result from all the cases, that if the party indebted, or holding the *chose in action* resists, no order can be made upon him. And in *Grew et al* vs. *Breed et al*, 12 *Metcalf*, 363, the language of *Lord Langsdale* in 1 *Beavan*, 269, is quoted with approbation, in which he says, "that it is only *in a clear and simple case* that a sequestration can be enforced by order, and that in other cases it may be necessary to resort to an action or suit under the direction of the court."

In the case before this court it is very clear that Mr. Ward does not admit that the money in his hands belongs to the person against whom the sequestration issued, nor is he willing to abide by the order of this court. On the contrary, he presents the deed of Betts to him, in trust, for purposes which he sup-

poses to be valid, and sets up his proceedings in the Superior Court for Baltimore city, for the administration of his trust under the direction of that court, and insists in his answer that such proceedings were right and proper, and that the funds in his hands should be distributed under its order.

I take it, therefore, to be clear, that I have no power to make an order upon him to bring in or pay over this money in satisfaction of the decree in favor of these plaintiffs, he being an unwilling party, resisting the application, and setting up a conflicting title; and the only question is, whether, under the circumstances of the case, it would be proper in the court to authorize the institution of proceedings at law or in equity to enforce the sequestration?

The practice in this respect is not, perhaps, altogether free from doubt, (2 *Daniel*, 1262,) but conceding it to be otherwise, I still think that in this case it would be wrong to enforce it.

It has already been stated that Mr. Ward, the grantee in the deed from Royston Betts, filed a report in the Superior Court of Baltimore city on the 6th of January, 1853, asking that the trust reposed in him might be administered under its direction, and that the creditors of Betts should be notified to produce their claims preparatory to a distribution of the trust fund, and that upon this application the court passed an order calling them in by a day named for that purpose. There can be no doubt, therefore, that the Superior Court, by passing this order, undertook to direct the administration of the trust, and that it will proceed to do so unless restrained by some tribunal having authority to interpose.

It is supposed that in making this application, the trustee considered himself acting in obedience to the provisions of the act of 1845, ch. 166, but it is insisted on the part of the complainants, that this act does not embrace a deed of this description to which recording is not necessary.

I do not consider it very essential to inquire whether this deed does fall within the spirit and intent of the statute, though in view of its object, I think it would be proper to give it a construction large enough to embrace it. But whether this be so or not, there can be no doubt that a trustee appointed by a

deed like that in question, may seek the protection and direction of the court, and that it has jurisdiction to protect him in the performance of his duties. This power of the court does not depend upon, nor is it derived from the act of Assembly referred to, but falls within the general scope of its authority over trusts.

Now, whether the mode adopted by Mr. Ward in invoking the aid of the Superior Court was the appropriate one or not, is not the question. The question is, had the court jurisdiction over the subject matter? for if it had, however irregular the proceeding was, it could not be regarded as *coram non judice* and void, nor could the irregularities be revised by this court. *Bowie* vs. *Jones*, 1 *Gill*, 208. The decision of a court of competent jurisdiction, when coming incidentally in question, or offered as evidence of title in another court, is conclusive of the question decided, no matter how irregular or informal the proceeding may be, or what mistakes or errors the court may make in the matter adjudicated. 2 *G. and J.*, 50.

The proceeding of the trustee in this case is said to be founded upon the peculiar practice of the Baltimore court. Be this as it may, and considering the proceeding wholly irregular, yet still, in view of the unquestionable right of the trustee to call upon that court to aid and protect him in the performance of his trust, and in view, likewise, of the undoubted jurisdiction of the court over the subject matter, it seems to me impossible to say that the proceeding is an absolute nullity and void. The object of Mr. Ward in applying to the court was to bring in all the creditors having a right to participate in the trust fund, and the order of the court directing notice to be given, was to bring them in accordingly. Now, if that court proceeds to distribute the money among the creditors, or the trustee does so under its authority and by its directions, can it be successfully contended that he would not be protected? I think not. I cannot, therefore, regard the proceeding in the Superior Court as void, and hence it appears to me it would not be proper in this court to authorize the institution of a suit at law or in equity for the purpose of enforcing the sequestration issued from this court. It might bring on a collision between the two courts,

when the authority of this court to issue and enforce the sequestration is certainly not free from doubt, whilst the jurisdiction of the Superior Court, in my opinion, cannot well be questioned.

Under these circumstances, this return to the sequestration, so far as the same relates to or affects the said William J. Ward, must be quashed, but no costs will be allowed.

ALEXANDER, for Complainants.

TALBOTT and R. JOHNSON, for Defendants.