[PHILADELPHIA, APRIL 16, 1835.]

## THOMAS *against* JENKS.

## PARRY *against* The Same.

### APPEAL.

An assignment by partners of partnership effects for the benefit of creditors, contained a condition that the creditors should execute by a day certain, a release of their claims to the assignors *individually* and as co-partners. Both the partners had separate property. *Held*, that the assignment was fraudulent and void.

THIS was an appeal by *Joseph S. Sloan,* assignee of *Jenks* and company, from the decision of the Court of Common Pleas of Bucks county, awarding to the plaintiffs the money in the hands of the sheriff, made under executions against *Jenks* and company.

By indenture dated the seventh day of February, A. D. 1833, *William P. Jenks* and *William Maris,* trading as *William P. Jenks & Co.,* made an assignment to *Sloan,* of all the machinery, stock, goods, chattels, debts, moneys, effects, messuages, lands and tenements, book debts, accounts, claims, and all other things whatsoever of the said *William P. Jenks & Co.,* as well real as personal, in trust to pay creditors in the manner therein set forth.

The assignment contained the following proviso: provided always, nevertheless, that no creditor shall be entitled to any benefit under the assignment, who shall not on or before the sixth day of March next, at 12 o'clock at noon on that day, in due form of law execute a full and sufficient release of and from their respective claims to the said *William P. Jenks* and *William Maris, individually and as co-partners.* Fourthly, to restore and repay to the said *William P. Jenks* and *William Maris,* the residue of the estate and effects or the proceeds thereof remaining in the hands of the said *Joseph S.*

*Sloan,* after payment and discharge and indemnity of the aforesaid claims in the manner and order aforesaid.

Releases were accordingly signed by a number of the creditors on the fifth day of March, 1833.

On the 8th of April, 1833, *Thomas* and *Parry* issued writs of *fi. fa.*

On the eleventh day of April, 1833, the sheriff levied under the plaintiffs' executions on the property, the right to the proceeds of which was the subject of the present controversy.

*Sloan* issued a foreign attachment against *William P. Jenks & Co.,* and directed the sheriff to attach the machinery included in the assignment.

*Sharswood* (*J. R. Ingersoll* was with him) for the appellant.

The first question is, whether an assignment of partnership property for the benefit of partnership creditors, and stipulating for a general release, is *per se* fraudulent? It is to be taken for granted, that this transaction was fair in fact, as nothing appears to the contrary. The right of a debtor in failing circumstances to prefer one creditor to another cannot now be doubted. *Hendricks* v. *Robinson,* 2 *Johns. Ch. Rep.* 283. *Wilt* v. *Franklin,* 1 *Binney,* 502. Nor can it be doubted that he may make a special assignment of part of his property for the benefit of particular creditors; nor is the mode of designation material. The case of *Lewkner* v. *Freeman, Finch,* 105, was a special assignment to pay scheduled debts and such other debts as the debtor within a certain time should appoint. The stipulation for a release has been recognized as valid in general assignments. *Lippincott* v. *Barker,* 2 *Binn.* 174. *Pierpont* v. *Graham,* 4 *Wash. C. C. Rep.* 232. It is worthy of remark that in *Pierpont* v. *Graham,* the assignment was as in our case, an assignment of partnership property only, and stipulated for a general release. *Sheepshanks* v. *Cohen,* 14 *Serg. & Rawle,* 35, appears also to have been an assignment of that character. But Judge STORY has expressly decided this point in our favour in *Halsey* v. *Whitney and al.* 4 *Mason,* 218, and in a very lucid and able opinion examined and sifted most of the cases. The only thing to the contrary that can be found in any of the books is a mere *obiter dictum* and a very loose one of Chancellor KENT in *Seaving* v. *Brinckerhoff,* 5 *Johns. Ch. Rep.* 329, which turned upon an entirely different point, and where though he viewed such a stipulation as unreasonable and strong evidence of fraud in fact, he does not say it is fraud *per se.*

Here was no resulting trust. The separate property continued open to the execution of the dissenting creditors. It did not pass by the assignment. All the cases on this subject are where the creditor is obliged to break down the assignment in order to get at the reserved fund. *M'Alister* v. *Marshall,* 6 *Binn.* 338. It results from the right of the debtor to prefer that he may offer terms, and

(Thomas *v.* Jenks—Parry *v.* The same.)

provided he does not withdraw any part of his property from the process of his creditors, for his own benefit, the transaction is unimpeachable.

The second question is, whether the executions in these cases were not laid too late? It appears that they were levied subsequent to the signature of the release by a large number of creditors. By so doing they had in effect accepted the fund assigned in full satisfaction of their respective debts, and in equity it had become theirs. *Brown* v. *Mintum et al.* 2 *Gallison*, 557, was an assignment of particular property for the benefit of certain creditors enumerated in a schedule; and it was held that they acquired by their assent not only an equitable but a legal right to the fund. That such an assignment as this is capable of confirmation is shown by many cases. *Austin* v. *Bell*, 20 *Johns.* 442. *Murray* v. *Riggs*, 15 *Johns.* 571. *Hatch* v. *Smith*, 5 *Mass.* 42. *Bradway's estate*, *Ashmead*, 212. *Marbury* v. *Brooks*, 7 *Wheat.* 556. *Brooks* v. *Marbury*, 11 *Wheat.* 78. In *Adlum* v. *Yard*, 1 *Rawle*, 163, there was no stipulation for a release, and it was decided by this court, that if a creditor take a dividend under a fraudulent assignment, he cannot afterwards question its validity. A release under the hand and seal of the creditor is certainly a more solemn and direct confirmation than the mere receipt of a dividend. "It has been conceded," says TILGHMAN, C. J. in *Lippincott* v. *Barber*, 2 *Binn.* 181, "that if any of the creditors had given a release before the execution was levied, such creditor would have been entitled to a preference." Indeed that case when examined will be found to be a case in point; for the court there carefully avoid deciding the question whether the assignment was valid; but defeated the execution of the dissenting creditor on the ground that it was not laid until after the assignment had been accepted by certain of the creditors. So it has been held in the Supreme Court of the United States, that in a fraudulent assignment, the assignee is entitled to retain for his own *bona fide* debt, for his equity is equal to the other creditors, and he has the possession. *Beach* v. *Viles*, 2 *Peters' S. C. Rep.* 675.

*Ross*, contra.

The assignment is void.—

1. Because it contains a resulting trust to the debtor. The court intimated that this point had been decided in favour of the resulting trust.

2. The time fixed for a release was unreasonably short only thirty days. *Pierpont* v. *Graham*, 4 *Wash. C. C. R.* 237.

3. Because the assignment is only of partnership property and yet stipulates for a release of their separate estates. An assignment stipulating for an exemption of part of the property is void as tend-

(Thomas *v.* Jenks—Parry *v.* The same.)

ing to delay, hinder and defraud creditors. The assignors here had individual property. All the debtor's property must pass in order shown to render the transaction valid. The courts have of late a disposition rather to restrict than extend these voluntary assignments.

Mr. *Ross* then went into an examination of the cases, citing *M'Alister* v. *Marshall*, 6 *Binn.* 338. *Passmore* v. *Eldridge*, 12 *Serg. & Rawle*, 198. *Sheepshanks* v. *Cohen*, 14 *Serg. & Rawle*, 35. *Wilson* v. *Kneppley*, 10 *Serg. & Rawle*, 439. *Johnson* v. *Harvey*, 9 *Serg. & Rawle*, 123. 2 *Penn. Rep.* 92. *Adlum* v. *Yard*, 1 *Rawle*, 163. *McClury* v. *Lecky*, 3 *Penn. R.* 83. *Leaving* v. *Brinckerhoff*, 5 *Johns.* C. *R.* 329. *Austin* v. *Bell*, 20 *Johns.* 450.

4. The possession of the property must pass to the assignee. *Hower* v. *Geesaman*, 17 *Serg. & Rawle*, 251. *Shaw* v. *Levy*, 17 *Serg. & Rawle*, 101. The attachment was conclusive evidence that the possession did not pass. There is no evidence that the assignee complied with the requisites of the act of 1832, as to schedule, bond, &c. Though the omission to comply with these requisites does not vitiate the assignment, it is evidence that the assignee never assented.

*Randall*, on the same side, was relieved by the court.

The opinion of the court was delivered by

Gibson, C. J.—It is difficult, at a glance, to reconcile the mind to the decisions in support of these conditional assignments in any case; or comprehend how a conveyance which puts the debtor's property beyond his creditor's reach, except on terms prescribed by himself, can be any thing else than an act to 'delay hinder and defraud' within the purview of the 13 *Elizabeth.* On the other hand, where the object is in truth distribution and not hindrance, the supervening delay being but incidental to the process, it is not easy to point out a defect in the argument on which they have been sustained. The basis of it is the admitted right which every debtor in failing circumstances has, to prefer one creditor to another : for as an assignment on valuable consideration and for a lawful purpose as payment of debts is, necessarily passes the property out of the debtor, the consequence indicated as apparently objectionable, is unavoidable though there be even an express reservation of a trust for the debtor in the unconsumed surplus, which is no more than the law would imply without it, such surplus being liable in his hands as if it had never passed from him. The difficulty is to understand how he may lawfully manage his right to give a preference in such a way as to secure an advantage to himself in the release of his person and future earnings. And the solution of it is found in the arbitrary control over the order of payment allowed

him by the common law, and not restrained by the 13 *Elizabeth ;* which, suffering him to postpone any creditor to the rest, makes participation of the fund before those he may choose *to prefer* are served, not so much matter of right as of favour.    To let a creditor in among the first, therefore, though on condition that he release the unpaid residue of his debt, may be to do him a favour instead of a wrong, which may consequently be extended to him on terms, or not at all.    Having an unquestionable power of preference of which he is the absolute master, it follows that he may set his price on it provided it be not a reservation of part of the effects for himself, or any thing that would carry his power beyond mere preference. Such is the unavoidable, if not the just, effect of suffering a debtor to distribute the wreck of his fortune among his creditors according to his pleasure ; and it is the repugnance of the mind to inequality of satisfaction which has induced legislators to extirpate the root of it in bankruptcy and insolvency, by substituting for it a process of distribution paramount to the will of the debtor.    To expunge the principle of preference from a bankrupt law made by the debtor for himself, so long as he is permitted to legislate for himself, would require the force of a statute : and I am unable to say that the deci- sions which sustained these assignments originally, though coupled with a stipulation for prospective exemption, were unfounded in the principles of the common law : certainly it is now too late to ques- tion their authority.    The legality of such a stipulation seems not to have been contested in *Burd* v. *Smith,* 4 *Dallas,* 76.    Indeed the reasons of the judges are so indistinctly set forth in that case, and the discrepance of their views is so remarkable, as to render it of little value as a precedent for any thing.    From *Lippincott* v. *Barker,* 2 *Binney,* 174, in which the point was expressly ruled, to the present time, the occurrence in practice of a countless number of such assignments—many of them recognised by judicial decision—and the *immense* amount of property held by the title, would make it dangerous even to pause as to the validity of it.

But the principle of preference on terms of compromise, is not to be indulged so far as to legalise the reservation of a portion of the effects for the debtor.    In *M'Allister* v. *Marshall,* 6 *Binney,* 338, it was held that an assignment of *all* the effects upon a stipulation to re-convey *a part* for the benefit of the debtor's family, is void for the part to be re-conveyed.    It was not necessary to pronounce it void for the whole as no more than the part re-conveyed was in contest ; but nothing is clearer than that a contract fraudulent in part by the provisions of a statute, whatever be the abstract effect of fraud in other cases, is void in the whole.    The principle has since been applied in *Hyslop* v. *Clark,* 14 *Johns.* 465, to the very case of an assignment in trust for payment of debts.    Under the 13 *Elizabeth,* then, what is the difference between a conveyance of the whole on terms of returning a part, and a conveyance of a part in the first

instance? Certainly but a difference of form, and not a difference in principle or effect. In either form the transaction would give the debtor the same advantage at the expense of the creditors. A debtor, for example, who has enough to pay seventy-five per cent. all round, assigns two-thirds of his effects, or to the value of fifty per cent. of his debts, in trust to pay those who shall release by a day certain; and retains to the value of twenty-five per cent. With the alternative of choosing between these two funds put before him, what would a creditor probably do? If two-thirds in value, and no more, should happen to prefer the trust fund, they would get seventy-five per cent.; their just proportion of the whole effects; while the others would get as much from the portion in the hands of the debtor; and in that conjuncture any particular choice would be indifferent to him. But if less than two-thirds should accept the terms proffered in the assignment, they would get more than their just proportion, and those who rejected them would get less. If, however, all should accept, then all would get at the least fifty per cent. while if all should reject, they would get but half as much. The probability therefore is that a great majority—perhaps all—would elect the trust fund; and that would leave a *surplus to the* debtor. Now it must be obvious that an exercise of the right of preference, which might produce that result, cannot be a legitimate one. The creditors are entitled to the benefit of the whole estate, of which they are not to be deprived by an arrangement which would impose on them the necessity of resorting to a part of it in exclusion of the rest. The very imposition of a choice which might prove unfortunate, would be an exposure of them to a peril which they are not bound to encounter. An assignment, therefore, that would present but a part of the effects to the creditors and refuse the rest, is necessarily fraudulent, inasmuch as it might be a means to extort an unfair advantage. But why, it may be demanded, shall not the debtor be suffered to stipulate for a part of the property as well as for the exemption of his person and future acquirements? The answer is that the statute, by which alone any stipulated exemption is prohibited, looks but to property which may be the subject of present assignment. It protects the creditor's recourse to the property conveyed by avoiding all conveyances that would 'delay, hinder, and defraud' him of it, without, however, protecting his recourse to any thing else, because the assignment cannot operate on any thing else.

Now an assignment of partnership effects is a partial one wherever the debtor has separate property. The terms of the present, embrace "all manner of machinery, stock, goods, chattels, debts, accounts, claims, and all other things whatsoever of the said *William P. Jenks and company,* as well real as personal, and of what nature, kind or quality soever," which evidently has respect but to the joint effects. And this assignment of the partnership effects is on condition that the creditor execute by a day certain, "a full and suffi-

(Thomas *v.* Jenks—Parry *v.* The same.)

cient release of and from his claim, to the said *William P. Jenks* and *William Maris, individually,* and as co-partners." Such a release would unquestionably exonerate their separate estates; and the validity of the assignment therefore depends on a single question of fact. It amply appears in the proofs reported by the Commissioner, that both partners had separate property—the one to the value of several hundred dollars, and the other to the value of several thousand. The assignment was therefore fraudulant and void; and the proceeds of the property were properly awarded to the execution creditors.

Decree in each case affirmed.