## FELLOWS v. GREENLEAF.

Where an assignment is made under chapter 134 Revised Statutes, for the benefit of creditors, and is executed and sworn to according to the requirements of that chapter, and is without any conditions prejudicial to creditors, either on the part of debtor, creditor, or assignee, the assent of all creditors to the same will be presumed until their dissent is proved.

A creditor who thus dissents from such an assignment, and sues the debtor and trustees the assignee, will take only the surplus in the assignee's hands, after all the other creditors are paid who do not dissent.

But where an assignment for the benefit of creditors contains conditions which are unfavorable to creditors, either on the part of the debtor, the creditors, or the assignee, so that the assent of creditors will not be presumed, that will avoid the assignment, so that any person who shall sue the debtor and summon the assignee as trustee, will hold all the property in the assignee's hands, as against any other creditors, whether they have assented to the assignment or not.

Such assignment not only does not need to contain, but should not contain any provision for the creditors to sign it, or become parties to it, because if it is properly drawn and executed between the debtor and the assignee, the assent of creditors will be presumed, and if not so, it will be void, as well as to those who have assented to it, as those who have not.

An assignment by a member of a firm, of all his property to an assignee, for the benefit of his creditors, will convey not only all his individual property, but his interest in the company property.

Such interest in the company property is only an interest in the surplus after the company debts are paid.

Therefore an assignee of an individual partner, who receives property belonging to the firm of which such partner is a member, will be chargeable for such partnership property, if summoned as trustee of the firm.

But where partners make an assignment for the benefit of partnership creditors, they must include their private property with that of the firm.

Yet all that the assignee in that case would hold of the individual property would be the surplus after paying the individual debts.

FOREIGN ATTACHMENT. The principal defendants were formerly copartners in trade at Salisbury, New-Hampshire, under the firm of Greenleaf & Clement, and the plaintiffs' cause of action is notes of said firm.

In 1852 the defendants discontinued their partnership business, so far as related to trade at said Salisbury, although no formal dissolution and no division of the liabilities of and debts due the firm was made, and Clement then began trade on his own account, and continued the same on his own account until the time of the assignment hereinafter mentioned, with the exception of about one year during the time, when he had another partner.

On the 12th day of October, 1860, said Clement made an assignment of his property to said trustee, a copy of which is annexed and makes a part of this case. This assignment was duly recorded in the office of the town-clerk of Salisbury, where the parties resided, and in the Registry of Deeds for this county.

At the time of said assignment Clement was largely indebted to various creditors on his own account, and was also indebted to the plaintiffs and others on account of claims against said firm of Greenleaf & Clement.

The trustee, under said assignment, took possession of the property of Clement, and also of some notes belonging to said firm of Greenleaf & Clement.

The plaintiffs' writ was dated December 18, and served on said trustee December 19, 1860. At that time none of the creditors of Clement or of Greenleaf & Clement had become parties to the assignment by signing the same, but some creditors of Clement had verbally assented to it, and others have so assented since that time, but none have become parties by signing the assignment. Up to the time of the commencement of this suit, and for some time after, said trustee continued to carry on the retail trade, selling and disposing of the stock of goods assigned to him for cash and barter, and replenishing the stock to some extent by purchases of new goods.

At the time of the commencement of this suit the plaintiffs had knowledge of said assignment.

The assignment was as follows:

"Know all men by these presents, that I, Jonathan H. Clement of Salisbury, in the county of Merrimack and State of New-Hampshire, merchant, for and in consideration of one dollar, to me paid by John C. Smith of the same Salisbury, gentleman, and of the trusts herein expressed, do grant, convey and assign, to said John C. Smith, all my property, estate, rights and credits, real, personal and mixed, wheresoever situate, and of whatsoever description, except such as is by law exempted from attachment and execution; to have and to hold the same to the said John C. Smith and his heirs in trust, to sell and dispose of said property to the best

advantage, and to collect and convert into money the said debts and demands, and after deducting from the proceeds of said property the necessary and reasonable expenses incurred by said John C. Smith in transacting the business, and a reasonable compensation for his services, to divide and pay all the proceeds of said property among all the creditors of said Jonathan H. Clement, in equal proportion to their respective claims.

And the said John C. Smith agrees to accept and execute said trust.

The creditors, whose names are subscribed, agree to said assignment.

Witness our hands and seals this twelfth day of October, A. D. 1860.

JONATHAN H. CLEMENT.        [*Seal.*]
JOHN C. SMITH.        [*Seal.*]

Signed, sealed and delivered
    in presence of us,
    JOHN M. SHIRLEY,
    D. R. EVERETT,
    A. J. SCRIBNER.

MERRIMACK SS.    October 12, 1860.    Then personally appeared the above named Jonathan H. Clement, and acknowledged the foregoing instrument to be his voluntary act and deed.

Before me,

JOHN M. SHIRLEY, *Justice of the Peace.*

I, Jonathan H. Clement, do solemnly swear, that I have placed and assigned, and that the true intent of this assignment is to place in the hand of my assignee all my property, of whatsoever description, except such as is by law exempt from attachments and execution, to be divided among all my creditors, in proportion to their respective claims.

JONATHAN H. CLEMENT.        [L. S.]

MERRIMACK SS.    October 12, 1860.    Then personally appeared Jonathan H. Clement, and made oath that the above affidavit, by him subscribed, is true.

Before me,        JOHN M. SHIRLEY, *Justice of the Peace.*"

The questions of law raised on the case were reserved.

*N. Butler*, for the plaintiffs.

*Minot & Mugridge, Pike & Barnard*, and *Shirley*, for the defendants and trustee.

SARGENT, J.*    In this case there is no provision in the assignment itself that the creditors should assent, or sign the paper, before the property passed to the hands of the assignee.    It is not properly a *tripartite* instrument, but is simply between the debtor and the

* BARTLETT, J., did not sit.

assignee, is properly made and sworn to under the statute, is in proper form without conditions, for the benefit of all creditors, and the acceptance of the trust on the part of the assignee is unconditional and unexceptionable. The sentence which is added at the close, "The creditors whose names are subscribed agree to said assignment," may be regarded as merely superfluous, and should not be held to prejudice the rights of creditors, as they had nothing to do with adding it to the assignment, nor does it appear that they ever knew or understood that any formal assent in writing was necessary. Some such creditors in fact assented before this suit was brought, and others have done so since, and it does not appear that any of Clement's creditors have in any way manifested their dissent. We think, then, that the assignment should stand as though this line had not been added to it.

The question then arises, whether, in such a case, where the assignment is proper in all respects, and according to the provisions of the statute, and the trust has been properly and unconditionally accepted, the assent of creditors is to be presumed, until the dissent is proved, or whether all are to be presumed to dissent, until their assent is proved?

Under the statute of 1834, no assignment, made for the benefit of creditors, shall be valid except the same shall provide for an equal distribution of all real, mixed, or personal estate, among the several creditors of the person making such assignment in equal proportion according to their respective demands, nor until the assignor has made oath that he has placed and assigned, and that the true intention of his assignment was to place in the hands of his assignee all his property of every description, except such as is exempted, &c., to be divided among his creditors in proportion to their respective demands. The same provisions substantially are found in the Revised Statutes, chapter 134; Comp. Stat. 297.

Nothing is said in the statute in regard to the assent of creditors. Soon after the passage of this law, we have some decisions showing what are not assignments under this statute. *Manufacturing Co.* v. *Smith*, 8 N. H. 347, decides that where a merchant who was about to be sued turned out his books of account to the officer having the writs, to be collected by him for the creditors, and applied on their debts, rather than have his goods attached and his store shut up, this was not an assignment, such as the statute of 1834 contemplated, and that such assigning of the books was good. That was like turning out a note to a creditor as collateral security, to prevent being sued on the claim, which is every day's practice, and no one doubts that this is well enough, for it is no such assignment for the benefit of creditors as the law of 1834 contemplated. *Low* v. *Wyman*, 8 N. H. 536, holds a similar doctrine, and *Barker* v. *Hall*, 13 N. H. 298, holds that a mortgage of all a debtor's property, to secure the debts and liabilities of certain creditors, made in good faith, was not an assignment under the act of 1834.

*Hurd* v. *Silsbee*, 10 N. H. 108, was an assignment to which the creditors were made parties, and contained conditions of such a

character that it was held the assent of creditors could not be presumed, and the assignment was held to be void. In the opinion in that case, *Parker*, C. J., says, " An assignment under the statute should have no conditions annexed to it. It need not even provide that the creditors become parties by executing it. If no conditions are annexed, the assignment being for the benefit of all the creditors, the assent of all may be presumed until the contrary appears. But such assent can not be presumed where a condition is affixed. Where there is no condition, the assent of the creditors being presumed until the contrary appears, the property is well held in trust for the benefit of all the creditors until dissent is in some way manifested. It is competent, of course, for any one to dissent; but this will not destroy the assignment. If he causes the trustees to be summoned in such case, he can only take such surplus as may remain after paying those who do not dissent. Where an assignment is made for the benefit of all the creditors, they must be allowed a reasonable time in which to bring in their claims before final distribution, and it is not necessary that the assignment itself should contain any provision upon that subject." So in *Jefts* v. *Spaulding*, cited in *Hurd* v. *Silsbee*, there was such a condition that the assent of creditors could not be presumed, and in both these cases it was held that they were not for the equal benefit of all creditors, but only for such as subscribed and at the same time agreed to a condition which the law did not require, and that, therefore, under the statute of 1834, they were void, not simply void as to those who had not assented, but void as to every body—as well those who had assented to them, as those who had not—and that no creditor could take any thing under them, even though he had assented in writing, according to the specified condition and terms of the same, if any one sued and summoned the assignee as trustee, and undertook to hold the property as against the assignment.

In *Flint* v. *Clinton Co.*, 12 N. H. 430, where an assignment was made under the statute of 1834, and was sufficient in all other respects, it was held, although it contained no provision for its execution by the assignee, and no covenant to be performed by him, and was not executed by him, that he need not become a party thereto by signing it, but that if he received the property and proceeded to execute the trust, the creditors might enforce the trust, and compel him to perform it, as effectually as if he had become a party to the deed by signing it. These cases, with *Rundlett* v. *Dole*, 10 N. H. 463, and *Beard* v. *Kimball*, 11 N. H. 471, holding that assignments for the benefit of creditors are void when not made in conformity with the provisions of the statute of 1834, were all decided within the seven or eight years next after the statute of 1834 was passed.

Now, taking these decisions alone, or taking all the decisions reported on that subject that were made during that period of time, there would not seem to be any doubt as to how the law of 1834 was construed. The first thing was to draw the line between such conveyances and transactions as were within the meaning of the law, and those that were not; whether the assign-

ment in question was technically an assignment for the benefit of creditors, within the meaning of the law of 1834, or not. If it was only the assigning of a note or account, or book of accounts, or a package of notes, to secure a particular debt, or a mortgage, or pledge of specific property to pay specific debts, then it would not constitute an assignment within the meaning of that law. But if it was an instrument technically known as "an assignment for the benefit of creditors," then the question would be, whether it is made according to the letter and spirit of that law; if so it is valid, otherwise void. But to be in accordance with the letter of that law, it must contain all the debtor's property, &c., be for the benefit of all his creditors; to be according to the spirit of that law, also, it must contain no conditions that would prevent the assent of the creditors from being presumed to it, because if it did it would be void as against any one who should summon the assignee as trustee of the debtor, in case of creditors who had assented as well as those who had not, and that is all that it would be in any case. The assignment not only does not need to contain, but should not contain any provision for the creditors to sign it or become parties to it, because if the assignment is properly drawn and executed between the debtor and the assignee, the assent of creditors will be presumed, and if not so, it will be void as against every body who chooses to elect to have it so. This would seem to be the unmistakable purport and substance of all the decisions in this State upon that subject from 1834 to 1842.

But after a time those assignments seemed to grow into disfavor with the court, and for the last twelve or fifteen years it would seem that the decisions have not been uniformly in accordance with those before cited; but many of them have been based upon the doctrine of *Leeds* v. *Sayward*, 6 N. H. 83, which was decided in 1833, before our present law was in force, where it was settled that an assignment at common law for the benefit of certain favored creditors would be good for such creditors as had assented to it, against the trustee process, but not for others; notwithstanding our statute of 1834 was intended to meet and remedy just such cases as *Leeds* v. *Sayward*, and to prevent the very preferences which that decision allowed.

*Leeds* v. *Sayward* was a leading case, before the statute of 1834, under the law applicable to common law assignments, which were all intended to be done away by the law of 1834, and under that law *Hurd* v. *Silsbee* is the leading case, which holds that all such assignments as that in *Leeds* v. *Sayward* would be void under that statute, as well in case of those who had assented to it, as those who had not, as against any creditor who should elect to avoid it.

Still some advance in the right direction has been made, for it was held in *Spinney* v. *Hosiery Co.*, 25 N. H. 9, decided in 1852, that a condition inserted in the assignment, on the part of the assignee, which is unfavorable to creditors, and which would prevent the presumption of their assent, would have the same effect, as a similar condition on the part of the debtor; and that such assent

will not be presumed where the assignee resides out of the State, or is grossly disqualified by his character or situation properly to discharge such trust. Now in the amendments of 1861 (Pamph. Laws, ch. 2488), provision is made that the assignee shall give bond to the Judge of Probate, and may be removed by him if incompetent, and a new assignee appointed, but in all assignments made prior to that time, if there is any condition in the assignment on the part of the debtor or assignee, unfavorable to creditors or the existence of any fact known to the creditors such that the assent of creditors to it will not be presumed, it should be held void as against any creditor electing to avoid it.

But experience has taught us, that to apply the principles laid down in *Leeds* v. *Sayward* to assignments made under the statute of 1834, or to hold that since that statute a common law assignment, making preferences among creditors, may be valid as to those who assent to it, is simply to nullify the law of 1834; and to hold that the assent of creditors is not to be presumed to an assignment, when made according to the provisions of that law, has precisely the same effect. The effect of either holding would be that those creditors who have actually assented to the assignment get their pay, while those who have not get nothing, whereas the statute designed that all should share alike. By holding that an assignment which contains conditions, so that the assent of creditors, can not be presumed, may yet be good as to those creditors who have actually assented to it, is saying that any man may prefer such creditors to the exclusion of all others, and have his assignment good, just as it was at common law, when the statute of 1834 declares that such assignment shall be void; because, if the doctrine of *Leeds* v. *Sayward* be applicable to cases under the statute of 1834, the debtor has only to insert some condition in his assignment, intentionally prejudicial to creditors, so that their assent will not be presumed, and then get his particular friends and favorite creditors to assent to it as it is, and then perhaps get some other favored creditor to sue him, and trustee his assignee, and the whole thing is done and accomplished to his will, in spite of the statute. But to apply the doctrine of *Hurd* v. *Silsbee*, in such case, you hold the assignment void, not only as to those creditors who have not signed it, but also as to those who have done so, as against all who choose to dissent and bring their suit, and summon the assignee as trustee; in other words you make the assignment void as the statute designed that such assignments should be.

But again suppose the condition prejudicial to creditors to have been inserted without any design on the part of the debtor. A creditor who should ascertain the fact has only to sign it, with all dispatch, and obtain enough of his friends who may chance to be creditors to do the same, to take the funds, and then wait for some one not in the secret, and one who may perchance think that the law of 1834 means something, and that the assignment is void, to sue and trustee the assignee, and the effect is not to get his debt, but to secure to them the

whole of theirs to the exclusion of every body else. The same result must necessarily follow from holding that the assent of creditors is not to be presumed in case where the assignment is correct and proper under the law of 1834, because, if in such case the assent of creditors is not to be presumed, then the assignment will only be effectual to benefit such as subscribe or assent to it, and where some have subscribed and others have not, if one should sue and trustee the assignee, he would hold all except what was necessary to pay those who had become parties to. the assignment, and the debtor would in all cases have it in his power after he had made his assignment correct in form according to law, to defeat its just operation by helping his favorite creditors in that way, or if the debtor means well, yet a few of his creditors who are most favorably situated might always manage in that way to get their whole debts, and deprive others, who live at a distance, or labor under other disadvantages, of all benefit of the assignment, by assenting to it themselves, and then getting some friend to sue and trustee the assignee. In fact, if that were held to be the law, every creditor, as soon as he had assented to the assignment, would have a direct interest to get the next man who came not to assent, but to sue at once, before enough should assent to take all the property, and thus secure to himself the whole amount of his debt instead of the small dividend which he might get if all the creditors assented.

But if it be held that, where the assignment is such as the law requires, the assent of all creditors will be presumed until their dissent is proved, then the debtor can take no such advantage, nor can one creditor or a few thus get advantage of all the rest, but all will stand an equal chance for their share. And in that case, if one creditor dissents, he will not be taking away the share of those who know nothing about the matter, but he will be in a position to take only the surplus in the hands of the assignee after all who do not thus dissent have been fully paid.

And whatever good and sufficient reasons the court may have had heretofore for treating these assignments with disfavor, it has now become sufficiently apparent what the wish and intention of the Legislature of the State is, in relation to them, by these enactments of 1861 and 1862 in amendment of the laws of 1834 (Pamphlet Laws, ch. 2488, and ch. 2595), in which last chapter, in order to set the mooted question at rest, it is enacted that the assent of all creditors shall be presumed to all such assignments, when properly made.

In the case before us no creditor of Clement is shown to have dissented from the assignment, nor is there any suggestion that the assignee is not a proper and competent man every way for the trust, or that the creditors are not satisfied with his proceedings. I am not aware that we have any reported decision which holds directly that the assent of creditors will not be presumed where the assignment is made according to the provision of the statute. I think it best, therefore, without undertaking to reconcile all the decisions that have heretofore been made upon this subject, to take

such a view and to hold in such a manner as shall give effect to the evident intention of the legislature in passing the law, and as shall give the designed effect to assignments; that is, when made according to the provisions of the law they shall be good, and the assent of creditors shall be presumed; but when there is some thing contained in the assignment that prevents that presumption, or some fact connected with the assignee, such as his known insolvency, his residence abroad, or his utter incompetency, or the like, which would have the same effect where the assignment was made prior to the amendments of 1861, then the assignment will be held to be void, and all creditors left as though no assignment had been made, if they choose to assert their legal rights. This assignment being well enough, the assent of all Clement's creditors is to be presumed. These creditors, therefore, will take nothing until all such creditors are fully paid.

But other questions arise here. The case finds that the assignee took with Clement's property some of the claims of the defendant company. Whether he took all such claims does not appear, but the terms of the assignment are broad enough to convey all Clement's right to all partnership property to the assignee for the creditors. The creditors of the individual partner are entitled, after taking his individual property and applying it, to have, also, the benefits of his interest in the company effects. But his interest in the company effects would only be a share in the surplus, after paying all the company debts.

It is held that where partners make an assignment for the benefit of partnership creditors, they must also include their private property with that of the company, because the partnership creditors have a right to the property of each individual to pay their debts, after the company property is exhausted; but in that case it is only the balance of the individual property after paying the individual debts. *Wiles* v. *Beales*, 1 Gray 236; *Thomas* v. *Jenks*, 5 Rawle 221; *Jarvis* v. *Brooks*, 23 N. H. 136, and cases cited. Here all Clement's rights and interests in and to all his property are assigned for the benefit of his creditors. And his individual creditors have a right to all his individual property to pay their claims first, before any of it goes to pay his company debts, and the creditors of the firm have the right to the partnership property to pay their claims first, and as it is admitted by the trustee that he holds some notes of the firm, and as he is not the assignee of the firm, but only of Clement, he will be held for the amount of such company notes to pay the debt of these plaintiffs, which is a company debt. If the assignee has collected these company notes he may be charged for the amount of them; otherwise a receiver may be appointed.

Trustee charged for avails of company property in his hands.